IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jennifer S., | ) |
|       *Plaintiff*, | ) ) ) Case No. 3:20-cv-50239 |
| v. | ) ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, Acting Commissioner of Social Security,[1] | ) ) ) |
|       *Defendant*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer S. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her social security benefits.[2] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

### I. Background

In 2006, Plaintiff stopped working after she broke her shoulder and because of mental health issues. R. 223. In 2013, Plaintiff filed an application for supplemental security income alleging a disability beginning in November 2013. R. 114. An administrative law judge ("ALJ") found that Plaintiff suffered from obesity; osteoarthritis of the knee joints, lumbar spine, and feet; bipolar disorder; and bilateral carpal tunnel syndrome. R. 117. However, in an April 2016 decision, the ALJ determined that Plaintiff retained the ability to perform light work with certain restrictions and was not disabled. R. 119-25. Plaintiff alleges that following the denial of benefits from her 2013 disability application, her conditions continued to deteriorate.

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

1

As relevant to this appeal, in September 2017, Plaintiff filed an application for supplemental security income alleging a disability beginning on March 24, 2017[3] because of her mental impairments and carpal tunnel syndrome. R. 200, 223. Plaintiff later alleged that she also continued to suffer from pain in her lower back, knees, and feet. R. 47, 245, 273, 304. Specifically, Plaintiff alleges that her pain, which started to affect her activities in October 2013, began to worsen in 2018. R. 268, 288, 304. She was 45 years old at the time she filed her application.

Following a hearing, an ALJ issued a decision in May 2019, finding that Plaintiff was not disabled. R. 13-29. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease in the lumbar spine; osteoarthritis in the knees; carpal tunnel syndrome bilateral, with release on the right; metatarsalgia,[4] bilaterally; contracture Achilles, bilaterally; chronic obstructive pulmonary disease; obstructive sleep apnea; obesity; bipolar disorder; and generalized anxiety disorder. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. The ALJ determined that Plaintiff could not perform her past relevant work, but there were other jobs that existed in significant numbers in the national economy that she could perform, including circuit board assembler, sorter, and table worker.

Plaintiff appeals the ALJ's decision as it relates to her physical impairments, arguing that the ALJ erred in analyzing her RFC and activities of daily living. Therefore, this Court will focus on the evidence relevant to the ALJ's evaluation of these issues in the discussion below.

---

[3] Both the ALJ and Plaintiff erroneously state that Plaintiff alleged a disability beginning on May 31, 2006. R. 13, Pl.'s Mt. at 1, Dkt. 17. However, that alleged onset date relates to Plaintiff's previous disability application filed in 2013. *See* R. 114.
[4] Metatarsalgia is pain in the forefoot in the region of the heads of the metatarsals. STEDMAN'S MEDICAL DICTIONARY 1195 (28th ed. 2006).

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citations omitted). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## III. Discussion

Plaintiff challenges the RFC determination by arguing that the ALJ: (1) improperly determined that she could perform light work; (2) failed to account for her use of a cane; and (3) improperly discounted her subjective symptoms by equating her activities of daily living with an ability to perform full-time work. Because this Court finds that a remand is warranted on the second and third issues raised by Plaintiff, the Court will address those first.

**A. Use of a Cane**

Plaintiff argues that in determining her RFC, the ALJ failed to account for her constant use of a cane for balance and ambulation. A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 416.945(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including

3

the claimant's medical history and findings, the effects of treatment, reports of daily activities, medical opinions, and effects of symptoms. 20 C.F.R. § 416.945(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

Here, the ALJ recognized that Plaintiff used a cane at times. In summarizing the medical evidence, the ALJ cited Plaintiff's testimony that she started using a cane in 2013 to relieve her pain and for balance. R. 19. The ALJ also cited Plaintiff's December 2017 physical consultative examination and August 2018 physical therapy note where Plaintiff's use of a cane was noted. *See* R. 22. However, the ALJ noted that during Plaintiff's October 2017 mental consultative examination, Plaintiff carried her cane more than she used it to ambulate. R. 24. Based on this evidence, the ALJ found that "although the claimant alleges disabling physical limitations, the claimant is still able to ambulate effectively and does not require the consistent use of an assistive ambulation device." R. 20. The ALJ reasoned that despite references in the record to Plaintiff's use of a cane, "the treatment notes do not reflect consistent use of a cane throughout the longitudinal record." R. 22.

The Commissioner admits that the ALJ's decision not to include use of a cane in the RFC is a "critical one" because at the hearing, the vocational expert testified that if Plaintiff required the use of a cane for standing, as opposed to ambulation, such a limitation would be work preclusive. Def.'s Resp. at 5, Dkt. 22 (citing R. 69-70). The Commissioner also admits that whether there was enough evidence to reasonably support the ALJ's conclusion that Plaintiff did not require a cane is "a close call." Def.'s Resp. at 6, Dkt. 22. Nonetheless, the Commissioner argues that the

4

ALJ's decision should be affirmed because it is reasonably supported by "multiple medical notes showing a cane was used for ambulation and the fact that one doctor found the cane barely needed for ambulation given plaintiff's ability to walk for an hour." *Id.*

The Commissioner's argument fails for two reasons. First, the ALJ did not make a finding that Plaintiff only needed a cane for ambulation, as opposed to balance or standing. In fact, the ALJ's only finding regarding Plaintiff's use of a cane was that she was able to ambulate effectively without the consistent use of a cane. The Seventh Circuit has made clear that this Court must confine its review to the reasons articulated by the ALJ in his decision. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon."). Here, because the ALJ did not make any findings about Plaintiff's use of a cane for balance or standing, the Commissioner's *post hoc* rationalizations are improper.

Second, even assuming the ALJ excluded Plaintiff's use of a cane from the RFC because he determined that she did not need it for balance or standing, the medical records that the Commissioner relies on and the ALJ cited do not support the ALJ's decision. The Commissioner cites:

- Plaintiff's December 2017 physical consultative examination where the physician found her "gait slow and measured, leaning on the cane," and that she was "able to walk on heels and toes gingerly, leaning on the cane." R. 663.

- Physical therapy notes from August 2018 noting that Plaintiff used a cane due to pain and "[a]mbulates w/ s.cane on the right, good cadence/balance." R. 1028, 1030, 1035, 1040.

- Plaintiff's October 2017 mental consultative examination where the examiner noted that Plaintiff "walked 'almost an hour' to get to the appointment" and that she "had a cane with her but appeared to carry it more than rely upon it for ambulation." R. 532-33.

Contrary to the Commissioner's argument, these records do not show that Plaintiff used her cane for ambulation, as opposed to balance or standing, or that she did not require a cane at all. The first medical note reporting "gait slow and measured, leaning on the cane" provides no insight into whether Plaintiff used her cane only for ambulation where there is no reference to Plaintiff's balance or her ability to stand with or without a cane. In fact, the same medical note reports that Plaintiff "uses a cane for support," which suggests Plaintiff used it for balance or standing. R. 662.

The medical notes from Plaintiff's physical therapy reported that Plaintiff "[a]mbulates w/ s.cane on the right, good cadence/balance." Although the notes indicate Plaintiff used her cane to ambulate, there is no indication she used it solely for ambulation. The ALJ referred to this note as reporting that Plaintiff "ambulated with a good cadence and balance with the cane." R. 22. Without any indication that Plaintiff had good balance without a cane, the ALJ's interpretation suggests that Plaintiff used her cane for both ambulation and balance.

The last medical note from Plaintiff's mental consultative examination references Plaintiff's ability to walk an hour. However, the examiner gave no indication whether Plaintiff walked an hour with or without her cane. Additionally, the examiner's reference to Plaintiff carrying her cane as opposed to using it for ambulating could support Plaintiff's use of the cane for balance or standing.

Despite these ambiguities in the record, the ALJ merely cited these medical notes in his summary of the evidence but failed to analyze them or otherwise explain why they support a finding that Plaintiff did not require a cane. Instead, the ALJ stated only that "the treatment notes

6

do not reflect consistent use of a cane throughout the longitudinal record." R. 22. Yet, the ALJ's decision does not address numerous additional references to Plaintiff's use of a cane throughout her treatment notes. Beginning in January 2016, Plaintiff's treating physician indicated in an RFC assessment that she had difficulty walking and problems with balance and required a cane for occasional standing and walking. R. 340-41. In March 2018, Plaintiff's treater refilled her prescription for a new cane. R. 814. Additionally, records from late 2016 through early 2019 identify Plaintiff's consistent use of a cane. R. 410-14, 505, 513, 743-45, 801, 811, 1184.

None of these records were cited by the ALJ so it is unclear whether the ALJ was aware of them or merely chose to ignore them. *See Dwayne E. v. Saul*, 20 C 4103, 2021 WL 4745300, at *6 (N.D. Ill. Oct. 12, 2021) (remanding where the Court was unable to determine if claimant's "cane use was ignored, overlooked, or simply not believed"). An ALJ cannot cherry-pick the records by relying on those that support his opinion and ignoring those that do not. *See Thomas v. Colvin*, 534 Fed. App'x. 546, 550 (7th Cir. 2013) (unpublished) (concluding that the failure to discuss cane use required remand because an ALJ is required to discuss contrary evidence and explain why it was rejected). Furthermore, the ALJ must consider "all the relevant evidence" in the record when determining Plaintiff's cane use. 20 C.F.R. § 416.945(a)(1). If the ALJ considered this evidence and found that they do not support Plaintiff's consistent use of a cane, for ambulation or balance, the ALJ must explain this in his decision.[5]

---

[5] Generally, an ALJ is entitled to rely on the state agency physicians' opinions to support his RFC determination. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *5. While the Commissioner does not make this argument, the Court notes that the state agency physicians' opinions, while citing Plaintiff's use of a cane in the explanation section for the exertional limitations imposed, do not provide any analysis on why they did not include Plaintiff's use of a cane in the RFC. *See, e.g.*, R. 101; *see Jonie G. v. Saul*, 18 CV 50100, 2019 WL 6716610, at *4 (N.D. Ill. Dec. 10, 2019) (finding it improper to rely on state agency opinion where the "physicians provided no explanation or analysis, making it impossible for this Court to follow their reasoning").

Instead, the ALJ's decision made no explicit findings about Plaintiff's use of a cane for balance or standing, and the records cited by the ALJ do not implicitly support the conclusion that Plaintiff did not require the use of a cane or only required it for ambulation. In light of the ALJ's determination that Plaintiff's degenerative disc disease, osteoarthritis in the knees, metatarsalgia, and contracture Achilles were severe impairments, Plaintiff's testimony that she had been using a cane since 2013 to relieve her pain and for balance, and medical records showing Plaintiff's consistent use of a cane, he must provide more than a cursory dismissal of Plaintiff's use of a cane when determining her RFC. *See Dwayne E.*, 2021 WL 4745300, at \*6 (finding that the ALJ's mention of claimants "repeated cane use alone requires the ALJ to engage in a discussion about the impact of that limitation in the RFC findings"). Accordingly, the Court finds that the ALJ's RFC determination is not supported by substantial evidence and a remand is required for the ALJ to properly consider the impact that Plaintiff's cane use would have on her RFC. On remand, this Court is not finding that the medical evidence requires that the ALJ find Plaintiff needs a cane, but instead that the ALJ must fully consider all the relevant evidence and properly explain his decision.

**B. Subjective Symptoms**

Plaintiff argues that the ALJ improperly discounted her subjective symptoms by equating her activities of daily living with an ability to perform full-time work. An ALJ must justify her evaluation of a plaintiff's subjective allegations with "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). "Because the ALJ is in the best position to determine a witness's truthfulness," an ALJ's assessment should not be overturned "unless it is patently wrong." *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) (unpublished) (citing *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012)). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir.

8

2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

In discounting Plaintiff's allegations of disabling physical limitations and pain, the ALJ found that "the totality of the evidence reflects treatment, findings, and activities of daily living that are not consistent with debilitating conditions and do not support the severity, intensity, or frequency of limitations alleged by the claimant." R. 20. As to Plaintiff's activities of daily living, the ALJ found that Plaintiff was "able to perform a wide range of activities of daily living that are not consistent with someone who is disabled." R. 25. The ALJ then identified that Plaintiff "watches television; tends to her personal care; tends to stay in her house; talks via the phone and computer with family; uses public transportation when needed; goes to the store; goes to doctor appointments; reads; and helps with household chores, such as washing a dish, picking up after herself, and doing some dusting." R. 25. The ALJ concluded that:

> The fact that the claimant can perform these activities of daily living, especially those that involve lifting and bending, is not supportive of a finding of disability. Further, it appears that despite her impairments, she has engaged in a somewhat normal level of daily activity and interaction. It should be noted that the physical and mental capabilities requisite to performing many of the tasks described above, as well as the social interactions, replicate those necessary for obtaining and maintaining employment.

R. 25.

When evaluating the intensity and persistence of a claimant's symptoms, an ALJ should consider the claimant's daily activities. *See* 20 C.F.R. § 416.929(c)(3)(i). However, there are limits on an ALJ's use of a claimant's daily activities. The Seventh Circuit has "cautioned ALJs not to equate such activities with the rigorous demands of the workplace." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations omitted). This is precisely what the ALJ did here. The ALJ

9

equated Plaintiff's activities, such as going to the grocery store, washing a dish, and dusting, with an ability to perform full-time work. The Commissioner admits that the ALJ's analysis here is "problematic." Def.'s Resp. at 7, Dkt. 22.

Nevertheless, the Commissioner maintains that because the ALJ provided other valid reasons for discounting Plaintiff's subjective symptoms, the ALJ's erroneous consideration should not provide a basis to remand. It is true that not all the ALJ's reasons must be valid in a subjective symptom analysis as long as enough of them are. *See Halsell*, 357 F. App'x at 722. However, this Court finds that the ALJ's other reasons do not sufficiently support discrediting Plaintiff's subjective symptoms.

First, the Commissioner argues that although the ALJ equated Plaintiff's daily activities with an ability to work, the ALJ properly relied on Plaintiff's "wide array of daily activities" to undermine her alleged limitations, namely her ability to stand for only 10 minutes at a time and her need for a cane. Def.'s Resp. at 7, Dkt 22. While daily activities can be used to undermine the extent of Plaintiff's limitations, the ALJ provided no basis for such a conclusion here. The ALJ discredited Plaintiff's limitations in part because she could perform activities that involved lifting and bending. R. 25. However, almost all the activities identified by the ALJ do not involve lifting or bending. At most, Plaintiff's ability to shower and pick up after herself could involve lifting and bending. Yet, Plaintiff qualified her activities by stating that she had difficulty washing and brushing her hair and needed to sit down to dress. R. 294. As for household chores, Plaintiff testified that she was unable to clean her own house, but that she tried to help her boyfriend by washing a dish, picking up after herself, and dusting. R. 64-65. Without more, there is no indication that Plaintiff's limited household chores involve lifting or bending and the ALJ did not cite to any other physical activities that supported his determination.

10

Moreover, the ALJ characterized Plaintiff's activities as "a somewhat normal level of daily activity" but without an explanation as to how her activities undermined her limitations, such as lifting 5 to 8 pounds, standing 10 minutes at a time, or difficulty walking. R. 25. Even one of the more involved activities the ALJ identified, such as Plaintiff's ability to go to the store, does not undermine her limitations where Plaintiff testified that her boyfriend did the grocery shopping, and she only went occasionally. R. 61. The ALJ does not account for this qualification or explain why Plaintiff's ability to shop occasionally with her boyfriend, or any of the other activities identified, was a basis for finding her activities exceeded her alleged limitations.

Next, the Commissioner argues that the ALJ found that Plaintiff was able to ambulate effectively despite her use of a cane. As set forth above, the records the ALJ failed to cite support Plaintiff's consistent use of a cane and the records the ALJ cited in his decision do not provide support for discounting Plaintiff's need for a cane.

Lastly, the Commissioner argues that the ALJ found that Plaintiff's physical impairments were well managed with conservative treatment. Specifically, the ALJ found that:

> The claimant's symptoms were not so severe that she required repeated inpatient hospitalizations, frequent emergency treatment, or intensive treatment with a specialist. Rather, her conditions were generally well managed with conservative, routine treatment, including, but not limited to physical therapy, medications, and some occasional injections with recent addition of medial branch blocks.

R. 20.

An ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). However, not all use of physical therapy, medications, and injections can be characterized as conservative treatment without further explanation. Courts often question an ALJ's characterization of such treatment as conservative, especially when medications included narcotics

11

as it did here. *See Cunningham v. Colvin*, 2014 WL 6634565, at *7 (E.D. Wis. Nov. 24, 2014) ("[P]laintiff received a wide array of treatments for her pain—including narcotic pain medication, epidural steroid injections, physical therapy, home-based exercises, and water aerobics—which cannot reasonably be characterized as conservative.") (citing cases); *see also* R. 46 (taking Tramadol); R. 843 (reference to previously taking Norco, Fentanyl, and Morphine). The ALJ also never explained his conclusion that Plaintiff's conditions were generally well managed with such treatment where Plaintiff testified that her medications only provided some relief for her pain. R. 46. Additionally, Plaintiff's physical therapy notes showed mixed results for Plaintiff's improvement with her reporting only 40% reduction in her pain, R. 790, and she reported that her injections only provided relief for a few months. R. 53, 835.

Throughout the decision, the ALJ summarizes Plaintiff's x-rays, MRIs, and physical examinations at length. As the Commissioner admits, these records similarly show mixed results with some showing Plaintiff's improvement in her strength and range of motion while others reveal Plaintiff's continued struggle with pain and walking, despite physical therapy and injections. Def.'s Resp. at 3, Dkt. 22. But other than summarizing these records, the ALJ fails to analyze the conflicting evidence before relying on it to conclude that Plaintiff's conditions were well managed with conservative treatment. Additionally, the ALJ provides no explanation as to how the imaging referenced in the record undermines Plaintiff's allegations of disabling limitations. A mere summary is not the same as meaningful analysis. *See Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015) ("[S]ummarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion.").

Furthermore, the ALJ did not cite medical evidence in support of his assumption that more aggressive treatment, such as inpatient hospitalizations, frequent emergency treatment, or

intensive treatment with a specialist, would be appropriate for Plaintiff's physical impairments. *See Myles v. Astrue*, 582 F.3d 672, 677-678 (7th Cir. 2009) (finding that ALJ's cannot make their own inferences about treatment levels without record support); *Martinez v. Astrue*, 2:10-CV-370-PRC, 2011 WL 4834252, at *8 (N.D. Ind. Oct. 11, 2011) ("The ALJ may consider conservative treatment in assessing the severity of a condition, but should cite medical evidence about what kind of treatment would be appropriate.") (internal quotations marks and citation omitted). The ALJ relied on the lack of inpatient hospitalizations without explaining why that form of treatment would be necessary for Plaintiff's impairments. *See Frobes v. Barnhart*, 467 F. Supp. 2d 808, 819 (N.D. Ill. 2006) (remanding where the "ALJ referenced emergency room visits and inpatient hospitalizations without explaining why those forms of treatment would be necessary for Claimant's impairments"). The ALJ cannot discount Plaintiff's allegations based on his own perceived need for inpatient treatment.

The ALJ also faulted Plaintiff for not seeking frequent emergency treatment. However, the Seventh Circuit has warned ALJs against relying on a claimant's failure to seek emergency medical care as evidence of the severity of a symptom or condition. *See Goins v. Colvin*, 764 F.3d 677, 679-80 (7th Cir. 2014). Again, there is no indication in the record that Plaintiff should have sought emergency treatment for her physical impairments. *See Pratt v. Colvin*, No. 12 C 8983, 2014 WL 1612857, at *7 (N.D. Ill. Apr. 16, 2014) (finding it improper to discount claimant's credibility based on a lack of an attempt to seek certain treatment where there is no evidence that such treatment was recommended or would have been effective).

The ALJ also faulted Plaintiff for not seeking intensive treatment with a specialist. Yet, the ALJ did not explain why Plaintiff's treatment with a neurologist, and orthopedist, and a physical therapist fell short of intensive treatment with a specialist. The ALJ concluded that the lack of such

13

treatment did not support the severity of Plaintiff's alleged functional limitations without any evidence to support this conclusion.

Moreover, although not addressed by the Commissioner, the ALJ also found that if Plaintiff's conditions were disabling, "the medical evidence of record would document more serious signs, findings, and symptoms." R. 24. Specifically, the ALJ found that Plaintiff's "alleged physical symptoms and pain did not result in symptoms that demonstrated most of the signs typically associated with chronic, severe pain and limitations, such as muscle atrophy, spasm, rigidity, or tremor." R. 20-21. However, the ALJ does not cite any evidence in support of his assumption that such signs are associated with Plaintiff's impairments. Overall, the Court finds that the ALJ's subjective symptoms evaluation lacks any explanation or support.

For these reasons, this Court find that a remand is warranted for a reevaluation of Plaintiff's subjective symptoms. Although the Court is not finding that the ALJ should have found Plaintiff's subjective allegations fully credible, "[g]reater elaboration and explanation is necessary to ensure a full and fair review of the evidence." *Dawn P. v. Berryhill*, No. 17 C 4707, 2019 WL 339603, at *7 (N.D. Ill. Jan. 28, 2019). On remand, the ALJ shall reevaluate Plaintiff's subjective symptom allegations pursuant to Social Security Ruling 16-3p, 2017 WL 5180304, and fully explain and support his conclusions.

**C. Light Work**

The final issue raised by Plaintiff is that the ALJ's determination that she could perform light work is not supported by substantial evidence because the state agency physicians in this case, which the ALJ found persuasive, found that Plaintiff could perform only sedentary work and the ALJ failed to adopt these opinions without explanation. Although not remanding on this issue,

14

the Court will briefly address the argument because the ALJ and the state agencies physicians' RFC is confusing and should be clarified on remand.

The state agency reviewing physicians, initially and on reconsideration, found that Plaintiff had the RFC to: lift/carry 20 pounds occasionally, lift/carry 10 pounds frequently, stand/walk for 2 hours, and sit for 6 hours. R. 81, 100-01. Additionally, the physicians found that Plaintiff had no limitations in her ability to push/pull, which included the operation of hand and/or foot controls. R. 81, 101. The physicians ultimately found that Plaintiff's maximum sustained work capability was for "sedentary" work. R. 84, 106.

In his decision, the ALJ found the state agency reviewing physicians' RFC determinations "persuasive" and determined that Plaintiff had the RFC to perform:

> light work as defined in 20 CFR 416.967(b) except for the following limitations: the claimant can stand/walk 2 hours; operate foot controls frequently with the bilateral lower extremities; and frequently handle and finger with the bilateral upper extremities. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights; never work around moving mechanical parts; and can tolerate occasional exposure to dust, odors, fumes and pulmonary irritants. The claimant is limited to no exposure to uneven ground. Due to moderate limitations in concentration, persistence, or pace, the claimant is limited to understanding, remembering and carrying out simple, routine and repetitive tasks; the claimant is able to interact with supervisors frequently; able to interact with coworkers occasionally; and able to interact with the public occasionally.

R. 17-18.

Although Plaintiff takes issue with the ALJ's failure to find a sedentary RFC, a review of the state agency physicians' opinions and the RFC adopted by the ALJ are substantially similar with the ALJ's RFC being more restrictive on limitations for use of foot controls, ladders, and balancing. Yet, it remains unclear why the state agency physicians characterized their RFC as sedentary when they also found that Plaintiff was capable of lifting up to 20 pounds occasionally

15

and 10 pounds frequently. Such limitations are in line with light exertional work. *See* 20 C.F.R. § 416.967 (explaining that "[s]edentary work involves lifting no more than 10 pounds at a time" while "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). Although the ALJ adopted the state agency physicians' determination that Plaintiff could stand and walk for 2 hours and sit for six hours, which is typically in line with sedentary work, a job qualifies as light work "when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). This is precisely what the ALJ found. However, in light of this case being remanded for the issues identified above, the ALJ and the state agency physicians should take the opportunity to clearly identify the exertional level that they found Plaintiff could perform to avoid any confusion with a new RFC determination and any related hypotheticals presented to the VE on remand. Plaintiff should raise any of her additional concerns relating to the RFC with the ALJ on remand.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion. This Court declines to order a finding of disability based on the record before it. It is more appropriate to remand to the ALJ to properly evaluate the evidence as outlined above and issue a new decision.

Date: January 31, 2022          By:    Lisa A. Jensen
                                       United States Magistrate Judge